IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| YOUNES KABBAJ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 13-1522-RGA |
| | : | |
| GOOGLE, INC., et al., | : | |
| | : | |
| Defendants. | : | |

Younes Kabbaj, Plantation, Florida.  Pro Se Plaintiff.

Ian Robert Liston, Esquire, Wilson Sonsini Goodrich & Rosati, Georgetown, Delaware.
Counsel for Defendants Google, Inc. and Amazon.com, Inc.

A. Thompson Baylis, Esquire, Abrams & Bayliss LLP, Wilmington, Delaware.  Counsel
for Defendant Yahoo! Inc.

**MEMORANDUM OPINION**

April _7_, 2014
Wilmington, Delaware

*Richard G. Andrews*

ANDREWS, UNITED STATES DISTRICT JUDGE:

Plaintiff Younes Kabbaj filed this action asserting jurisdiction by reason of diversity pursuant to 28 U.S.C. § 1332 and raising claims under Delaware law. (D.I. 2, 23). He appears *pro se* and was granted leave to proceed *in forma pauperis* (D.I. 5), but he paid the filing fee on October 2, 2013. Presently before the court are numerous motions, including motions to dismiss, motions to amend, discovery motions, and a motion for sanctions. (D.I. 26, 28, 39, 46, 56, 64, 76, 81, 90, 92, 96). The matters have been fully briefed.

## BACKGROUND

Plaintiff filed this action on August 28, 2013 (D.I. 2, 7), followed by an amended complaint (D.I. 23) on November 12, 2013, subsequent to the filing of a motion to dismiss by Defendants Amazon.com, Inc. and Google, Inc. (D.I. 19). The amended complaint alleges that unknown third parties authored and posted online content that defamed Plaintiff.[1] Plaintiff alleges that Defendants are liable because this content was allegedly hosted on services operated by Defendants Google, Inc., Amazon.com, Inc., and Yahoo! Inc. Plaintiff raises claims against Defendants for: (1) declaratory and injunctive relief; (2) tortious interference with a contract; (3) negligent and intentional infliction of emotional distress; and (4) libel per se. The amended complaint alleges that Defendants "hosted" the content (D.I. 23 ¶¶ 12, 33), "administered" the underlying services (*id.* at ¶ 12), and provided a "platform[]" for others' content (*id.* at ¶¶ 25, 37).

_____

[1]The amended complaint is similar to the original complaint, but added numerous other fantastical allegations that the court finds no need to address. Having reviewed the amended complaint in its entirety, suffice it to say, the seventy-four page amended complaint fails to comply with the requisites of Fed. R. Civ. P. 8(a)(2) which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

More particularly, the amended complaint alleges that: (1) Google administered a blogger service and profile pages that contained defamatory and threatening communications (*id.* at ¶ 12-13); (2) Amazon created several accounts wherein it published/sold novels authored by third-parties and published user comments that defamed Plaintiff (*id.* at ¶ ¶ 17-22), and (3) defamatory content was created and sent by users of Yahoo's email and internet service platform (*id.* at ¶ ¶ 25, 37). The amended complaint identifies John Doe Defendants as the content creators. (D.I. 23 ¶¶ 6, 22, 123). In his prayer for relief, Plaintiff seeks discovery, injunctive relief, and compensatory and punitive damages.

## MOTIONS TO DISMISS

Defendants seek dismissal (D.I. 39, 46) pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff opposes (D.I. 45, 48) the motions. Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. When determining

2

whether dismissal is appropriate, the court must take three steps: "(1) identify[] the elements of the claim, (2) review[] the complaint to strike conclusory allegations, and then (3) look[] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

## DISCUSSION

Defendants move to dismiss pursuant to Rule 12(b)(6 ) on the grounds that: (1) they are immune from suit pursuant to 47 U.S.C. 230(c);[2] (2) the amended complaint disregards Fed. R. Civ. P. 8(d)(1) requirements that a pleading's averments be simple, concise, and direct; and (3) the amended complaint fails to state a claim for relief. In addition, Defendants contend that further amendment is futile.

### 47 U.S.C. § 230

Defendants argue that Plaintiff's claims are barred by § 230 of the

---

[2]An affirmative defense that may be apparent on the face of a complaint, like immunity, can provide the basis of a dismissal pursuant to Rule 12(b)(6). *See Ball v. Famiglio*, 726 F.3d 448, 461 (3d Cir. 2013).

3

Communications Decency Act.[3] Under the Act, interactive computer service providers

are immunized against liability for third-party-created content. Section 230 of the Act

provides in relevant part:

> No provider or user of an interactive computer service shall be treated as
> the publisher or speaker of any information provided by another
> information content provider. . . . [Further, n]o cause of action may be
> brought and no liability may be imposed under any State or local law that
> is inconsistent with this section.

47 U.S.C. § 230(c)(1), (e)(3). Section 230 "precludes courts from entertaining claims

that would place a computer service provider in a publisher's role, and therefore bars

lawsuits seeking to hold a service provider liable for its exercise of a publisher's

traditional editorial functions." *Green v. America Online (AOL)*, 318 F.3d 465, 471 (3d

Cir. 2003) (internal citations omitted).

Under § 230(c)(1), immunity requires three elements: (1) defendant must be a

provider or user of an "interactive computer service;" (2) the asserted claims must treat

defendant as a publisher or speaker of information; and (3) the challenged

communication must be "information provided by another information content provider."

First, each moving Defendant is an interactive computer service provider. Under the

Act, an interactive computer service is "any information service, system, or access

software provider that provides or enables computer access by multiple users to a

---

[3]Title V of the Telecommunications Act of 1996, Pub.L. No. 104-104, 110 Stat.
56 (1996), is known as the "Communications Decency Act of 1996." The main goal of
the CDA was to protect minors from harmful material on the internet. *See Reno v.
American Civil Liberties Union*, 521 U.S. 844, 849 (1997). In 1997, the United States
Supreme Court found that portion of the statute abridged "the freedom of speech"
protected by the First Amendment. (*Id.*) The section at issue in this case, § 230,
remains intact. *See DiMeo v. Max*, 433 F. Supp. 2d 523, 528 n.8 (E.D. Pa. 2008).

4

computer server." 47 U.S.C. § 230(f)(2). The allegations in the amended complaint are premised upon the fact that third parties were provided access to Defendants' online services. A number of courts have held that Google's online services, Amazon's services (including its online bookstore), and Yahoo's online services fit the definition of an interactive computer service provider. *See, e.g., See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 (9th Cir. 2009) (Yahoo is a provider of an interactive computer service); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 630-31 (D. Del. 2007); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006); *Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1123 (E.D. Cal. 2010); *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 885 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010) ("Yahoo! should be entitled to immunity because it acted as an interactive computer service."); *Doe v. Bates*, 2006 WL 3813758, at *15 (E.D. Tex. 2006) (Yahoo is a provider of an interactive computer service and therefore falls within the class of entities entitled to the protections of § 230); *Almeida v. Amazon.com, Inc.*, 2004 WL 4910036, at *4 (S.D. Fla. 2004) (finding it "irrefutable" that Amazon's bookstore met the definition because "[i]ts primary function is to allow multiple users to a computer service the ability to purchase various items, including but not limited to, books"), *aff'd*, 456 F.3d 1316 (11th Cir. 2006); *Schneider v. Amazon.com*, 31 P.3d 37, 40 (Wash. Ct. App. 2001) ("Amazon's website enables visitors to the site to comment about authors and their work, thus providing an information service that necessarily enables access by multiple users to a server. This brings Amazon squarely within the definition.").

Second, Plaintiff seeks to hold Defendants liable for information provided by third-parties, namely, the John Doe Defendants. An information content provider

5

includes "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). If a defendant did not create or author the statement in controversy, but rather is provided that statement by a third-party information content provider, then that defendant cannot be held liable under the Act. *See e.g., Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) ("[S]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process.").

The amended complaint does not allege that any Defendant created or authored the defamatory statements. Rather, the amended complaint alleges that Defendants hosted content, administered services, and provided a platform for others' content. Because Plaintiff seeks to impose liability for Defendants' actions involving information provided by another information content provider (*i.e.*, the Doe Defendants), § 230(c) applies to his claims.

Finally, Plaintiff's claims seek to treat Defendants as the publisher of a third party's statements. Traditional acts of an editorial, or publishing, nature include "deciding whether to publish, withdraw, or alter content." *Green v. America Online*, 318 F.3d at 471. Courts have repeatedly held that defamation claims against qualified providers are barred by the Act. *See, e.g., Parker v. Google, Inc.*, 422 F. Supp. 2d at 500-01 (dismissing plaintiff's claims against Google regarding allegedly defamatory messages posted on a website because the Act "was intended to provide immunity for service providers like Google on exactly the claims Plaintiff raises here"); *see also Ben*

6

*Ezra, Weinstein, and Co. v. America Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000); *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir.1997).

Defendants contend that they are immune from each of Plaintiff's claims. The case law supports this contention. Courts have found that the Act bars claims for tortious interference with a contract, intentional infliction of emotional distress, and defamation. *See DiMeo v. Max*, 248 F. App'x 280, 282-83 (3d Cir. 2007) (affirming denial of amendment as futile in view of § 230 when plaintiff sought leave to add claims of intentional infliction of emotional distress and defamation); *Shrader v. Beann*, 503 F. App'x 650, 654 (10th Cir. 2012) (owner/operator of internet trade website immune under the Act from liability for defamation and intentional infliction of emotional distress); *Getachew v. Google, Inc.*, 491 F. App'x 923, 925-26 (10th Cir. 2012) (internet search engine immune under the Act from state law claims stemming from search results that yield content created by third party); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 257-58 (4th Cir. 2009) (the Act precludes liability for defamation and tortious interference with business expectancy); *Fair Housing Council of San Fernando Valley v. Roommates. Com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under § 230); *Spreadbury v. Bitterroot Pub. Library*, 2011 WL 7462038, at \*9 (D. Mont. 2011) (section 230(c)(1) of the Act barred tortious interference with employment claim); *Novak v. Overture Services, Inc.*, 309 F. Supp .2d 446, 452–53 (E.D.N.Y. 2004) (section 230(c)(1) barred claim for tortious interference with prospective economic advantage); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 538 (E.D. Va 2003) (section 230(c)(1) barred claims for intentional infliction of

7

emotional distress); *Whitney Info. Network, Inc. v. Verio, Inc.,* 2006 WL 66724, at \*2-3 (M.D. Fla. 2006) (section 230(c)(1) barred tortious interference with a business relationship claim).

The Defendants are immune under the Act against Plaintiff's allegations. Defendants cannot be held liable for state law claims because they opted to publish a third party's statements, acts identified as a traditional editorial function. The Court further finds that the amended complaint does not state, nor will it be able to state, any viable claims against Defendants with respect to their decision to publish third party statements. Thus, the Court grants the Defendants' motions to dismiss with prejudice. Further, as discussed below at pp. 9-12, even were Defendants not protected by § 230(c), the amended complaint fails to state any claims against them upon which relief may be granted under Delaware law.

### Declaratory and Injunctive Relief

The amended complaint raises a claim for "declaratory and injunctive relief," for Defendants to "immediately provide to Plaintiff all evidence in their possession that will help identify the John Does defaming and threatening Plaintiff via their facilities." (D.I. 23 ¶ 124).

Injunctive and declaratory relief are remedies rather than causes of action. *See, e.g., Birdman v. Office of the Governor,* 677 F.3d 167, 172 (3d Cir. 2012). Such relief cannot be obtained without stating an underlying cause of action. Accordingly, the Court will grant Defendants' motions to dismiss the claim for declaratory and injunctive relief.

8

### Tortious Interference with a Contract

Plaintiff attempts to raise claims for tortious interference with a contract. (D.I. 23, ¶¶ 126-129). He alleges that the acts of the Doe Defendants tortiously interfere with a settlement agreement Plaintiff entered into with his former employer, the American School of Tangier and Marrakesh. Because the identity of the Doe Defendants are unknown to Plaintiff, he attempts to sweep moving Defendants into his tortious interference with a contract claim by alleging they "are also engaging [in] tortious interference with the contract if they do not immediately act to provide all information necessary to identify" the Doe Defendants. (*Id.* at ¶ 127).

A claim for tortious interference with contract has five elements under Delaware law: "(1) a valid contract; (2) about which the defendants have knowledge; (3) an intentional act by the defendants that is a significant factor in causing the breach of contract; (4) done without justification; and (5) which causes injury." *Gill v. Delaware Park, LLC*, 294 F. Supp. 2d 638, 645 (D. Del. 2003) (citing *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987)).

Even liberally construing the amended complaint, as the Court must, it falls far short in its attempt to state a claim for tortious interference with a contract. The amended complaint does not allege that any moving Defendant had knowledge of the settlement agreement or that any Defendant played any role in the alleged breach of the contract. Rather, Plaintiff seeks information from Defendants to identify John Does. Therefore, the Court will grant Defendants' motions to dismiss the claim for tortious interference with a contract for failure to state a claim upon which relief may be granted.

9

## Negligent and Intentional Infliction of Emotional Distress

The amended complaint raises a claim of negligent and intentional infliction of emotional distress. (D.I. 23 at ¶¶ 130-132). The amended complaint alleges that Defendants' actions constituted negligent infliction of emotional distress when they failed to secure their facilities to prevent the John Does from publishing false and defamatory communications about Plaintiff. Plaintiff states that he would be willing to "forgo any financial compensation" from Defendants should they be able to produce evidence to identify the Doe Defendants. The amended complaint also alleges intentional infliction of emotional distress because the Defendants' actions were "deliberate, intentional and designed to harm [Plaintiff] with violence if possible." (*Id.* at ¶ 132).

To state a claim for negligent infliction of emotional distress, Plaintiff must allege negligent conduct that proximately causes emotional distress and that the emotional distress is accompanied by non-transitory, recurring physical phenomena. *See Greene v. United States Postal Serv.*, 462 F. Supp. 2d 578, 580 (D. Del. 2006) (citing *Lupo v. Medical Ctr.*, 1996 WL 111132, at *3 (Del. Super. 1996)). Where a plaintiff claims the emotional distress was caused directly by another's negligence, the plaintiff must show the actor's negligent conduct created "an unreasonable risk of causing . . . emotional disturbance to another." *Id.* "In addition, the plaintiff must show that the distress was sufficient to cause physical injury." *Id.* (quoting *Lloyd v. Jefferson*, 53 F. Supp. 2d 643, 675 (D. Del. 1999)). Intentional infliction of emotional distress requires that one intentionally or recklessly cause severe emotional distress to another by conduct that a

10

reasonable person would consider extreme or outrageous. *Rhinehardt v. Bright*, 2006 WL 2220972, at \*4 (Del. Super. 2006).

When alleging a negligence claim, a plaintiff must establish that "defendant owed plaintiff a duty of care; defendant breached that duty; and defendant's breach was the proximate cause of plaintiff's injury." *Pipher v. Parsell*, 930 A.2d 890, 892 (Del. 2007). Courts have repeatedly held that under the Communications Decency Act, Internet service providers do not owe a duty to police the Internet, remove content, or otherwise protect users from the speech of third parties. *See Green v. America Online (AOL)*, 318 F.3d at 471 ("There is no real dispute that Green's fundamental tort claim is that AOL was negligent in promulgating harmful content and in failing to address certain harmful content on its network. Green thus attempts to hold AOL liable for decisions relating to the monitoring, screening, and deletion of content from its network - actions quintessentially related to a publisher's role. Section 230 'specifically proscribes liability' in such circumstances."). Hence, the claim fails.

In addition, the negligent and/or intentional or infliction of emotional distress claim is not supported by sufficient factual allegations to survive a motion to dismiss. The amended complaint fails to state a claim for negligent infliction of emotional distress in that it fails to allege that Plaintiff experienced any physical consequences or symptoms as a result of his alleged emotional disturbance. With regard to the allegations of intentional infliction of emotional distress, the amended complaint fails to allege facts indicating that the Defendants' conduct was extreme or outrageous, or that Plaintiff suffered emotional distress so severe as to give rise to an actionable claim. Indeed, the claims are merely conclusory.

11

In light of the foregoing, the Court will grant Defendants' motions to dismiss the claim of negligent and intentional infliction of emotional distress for failure to state a claim upon which relief may be granted.

### Defamation

The amended complaint raises a claim for libel per se. (D.I. 23, ¶¶ 133-136). It alleges that Plaintiff has been damaged by the malicious and willful defamatory published statements made by Doe Defendants. The amended complaint further alleges that in the event Defendants are unable to provide evidence to identify the John Doe Defendants, Defendants are "additionally liable for damages to the Plaintiff for libel." (*Id.* at ¶ 136).

To state a defamation claim, "a plaintiff must satisfy five elements: (1) defamatory communication; (2) publication; (3) the communication refers to the plaintiff; (4) a third party's understanding of the communication's defamatory character; and (5) injury." *Esposito v. Townsend*, 2013 WL 493321, at *7 (Del. Super. 2013).

The amended complaint fails to state a claim for defamation. It does not allege any of the moving Defendants authored a single statement regarding Plaintiff, defamatory or otherwise. It is evident that Plaintiff's intent in naming them as Defendants is to gain discovery. The Court will grant Defendants' motions to dismiss the defamation claim for failure to state a claim upon which relief may be granted.

## MOTION TO AMEND

Plaintiff has filed three motions to amend the amended complaint. (DI. 81, 92, 96). In the first motion, he seeks to identify a Doe Defendant as Brian Albro. (D.I. 81). In the second motion, Plaintiff seeks to add the American School of Tangier as a

Defendant. (D.I. 92). In the third motion, Plaintiff moves to file a second amended complaint that adds both Albro and the American School of Tangier. (D.I. 96).

Pursuant to Fed. R. Civ. P. 15(a), a party may amend its pleading once as a matter of course within twenty-one days after serving it or, if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or twenty-one days after service of a Rule 12(b) motion, whichever is earlier. Otherwise, a party may amend its pleading only with the opposing party's written consent or the court's leave. Rule 15 provides that court should freely give leave to amend when justice so requires.

The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990) (citations omitted). Amendment, however, is not automatic. *See Dover Steel Co., Inc. v. Hartford Accident and Indem.*, 151 F.R.D. 570, 574 (E.D. Pa. 1993). Leave to amend should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *See also Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). If the proposed amendment "is frivolous or advances a claim or defense that is legally

13

insufficient on its face, the court may deny leave to amend." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).

The Court will deny the motions. The proposed second amended complaint raises claims against Albro and the American School of Tangier relating to an alleged breach of contract with regard to settlement in *Kabbaj v. American School of Tangier*, Civ. No. 10-431-RGA (D.Del.) and a separate defamation claim against Albro. (D.I. 96 proposed First, Second, and Fifth Claims). Plaintiff's remedy against Albro and the American School of Tangier lies in Civ. No. 10-431-RGA, wherein Plaintiff is required to gain permission before filing a civil claim against the American School of Tangier and Mark Simpson (or his family members).[4] (*See* Civ. No. 10-431-RGA, at D.I. 54 at 2). With regard to the Google, Amazon, and Yahoo, the claims will be dismissed as discussed above.

Finally, Plaintiff names John Doe Defendants. Pursuant to Fed. R. Civ. P. 21, "the court may at any time, on just terms, add or drop a party." A court my drop John Doe Defendants under this rule. *See Adams v. City of Camden*, 461 F. Supp. 2d 263, 271 (D.N.J. 2006). Because Plaintiff has failed to identify the John Doe Defendants, other than Albro, an individual for whom Plaintiff must seek permission to sue and, because Plaintiff's claims otherwise fail for the reasons discussed above, the Court dismisses the John Doe defendants. The Court finds amendment futile.

## RULE 11 SANCTIONS

---

[4]Plaintiff states that Albro is the "possible husband" of Simpson. (*See* D.I. 81, ¶ 1).

14

Yahoo moves for Rule 11 sanctions against Plaintiff to "deter him from using the judicial system to make barbaric and heinous threats against this Court, the attorneys involved in this matter, and the unrelated parties improperly included in this action." (D.I. 65 at 1). Yahoo contends that Plaintiff makes it patently clear that he filed this case for improper purposes, including to obtain discovery by improper means, to harass parties to the litigation, and to threaten violence against the parties. (*See id.*)

Federal Rule of Civil Procedure 11 requires that the party making a submission to the court make a reasonable inquiry into both the facts and law.[5] *See Schering Corp. v. Vitarine Pharm., Inc.*, 889 F.2d 490, 496 (3d Cir. 1989). Rule 11 sanctions do not require a showing of bad faith: the party to be sanctioned need only have engaged in objectively unreasonable conduct in making the submission at issue. *See In re Taylor*, 655 F.3d 274, 282 (3d Cir. 2011). It goes without saying that filings made in bad faith or for an improper purpose, necessarily violate Rule 11. *See Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 616 (3d Cir. 1991).

The Court notes that Plaintiff's filings have included threats of violence, derogatory language, and pornographic photographs. The Court revoked Plaintiff's electronic filing rights. (*See* D.I. 50). Also of concern to the Court is that Plaintiff acknowledged in his motion for extension of time to respond/stay of litigation (D.I. 76)

---

[5]Rule 11(b) provides as follows: "By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an . . . unrepresented party certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose . . .; [and] (2) the . . . contentions are warranted by existing law . . ."

15

that he initiated the instant action against Google, Amazon, and Yahoo "to attempt to obtain the information requested." (*Id.* at 2, ¶ 04).

Although the Court does not hold Plaintiff, who is proceeding pro se, to the same standard applicable to an attorney, the obligations of Rule 11 still apply to him. *See, e.g., Toll v. American Airlines, Inc.*, 166 F. App'x 633, 637 (3d Cir. 2006) (affirming award of monetary sanctions under Rule 11 against a *pro se* plaintiff). At this juncture, the Court will not sanction Plaintiff and will deny Yahoo's motion. The Court, however, warns Plaintiff that if he continues inappropriately, his actions may be addressed by sanctions, including monetary sanctions.

## DISCOVERY AND MISCELLANEOUS MOTIONS

Inasmuch as the Court will grant the motions to dismiss and finds amendment futile, the court will dismiss as moot the remaining pending motions (D.I. 26, 28, 56, 76, 90).

## CONCLUSION

For the above reasons, the Court will: (1) GRANT Defendants' motions to dismiss (D.I. 39, 46); (2) DENY Defendant Yahoo's motion for sanctions (D.I. 64); (3) DENY plaintiff's motions for leave to amend (DI. 81, 92, 96); and DISMISS as moot the remaining motions (D.I. 26, 28, 56, 76, 90). An appropriate order will be entered.

16